UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAQSOOD ALI HAIDARI, | CASE NO. C26-1655-KKE |
| Petitioner(s), | ORDER GRANTING HABEAS PETITION |
| v. | |
| BRUCE SCOTT, et al., | |
| Respondent(s). | |

Petitioner has been detained at the Northwest Immigration and Customs Enforcement ("ICE") Processing Center since September 2025, and an immigration judge denied bond because he found that Petitioner was a flight risk. Because no reasonable person could reach that conclusion on this record, the Court finds that the immigration judge abused his discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government[1] to release Petitioner from custody.

## I.    BACKGROUND

Petitioner is a citizen of Afghanistan. Dkt. No. 6-2 at 3. In September 2024, Petitioner entered the United States at a port of entry after making a CBP One appointment. Dkt. No. 6-1 at 2, Dkt. No. 8 ¶ 4. Petitioner applied for admission to the United States and requested asylum. Dkt. No. 8 ¶ 4. The United States Border Patrol placed Petitioner in expedited removal proceedings

---

[1] This order refers to the Federal Respondents collectively as "the Government."

ORDER GRANTING HABEAS PETITION - 1

and referred Petitioner to the United States Citizenship and Immigration Services ("USCIS") for a credible-fear interview.  *Id.*

USCIS conducted a credible-fear interview (Dkt. No. 8 ¶ 5) and Petitioner was thereafter served with a notice to appear, which charged him with a violation of Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act.  Dkt. No. 6-1.  The notice to appear states that an asylum officer found that Petitioner demonstrated a credible fear of persecution or torture.  *Id.* at 2. Petitioner was released from ICE custody in October 2024 when he was granted parole.  Dkt. No. 8 ¶ 7.  His parole would automatically expire after one year or if he departed from the United States, unless ICE provided an extension.  *Id.*

In January 2025, Petitioner filed a Form I-589, an application for asylum and withholding of removal, and amended his application in April 2025.  Dkt. No. 8 ¶¶ 8–9.  After a hearing, an immigration judge found that Petitioner's fear of returning to Afghanistan was not credible, and ordered Petitioner removed to Afghanistan and denied Petitioner both asylum and withholding of removal.  *Id.* ¶ 12; Dkt. No. 7.

Apparently intending to seek asylum in Canada, Petitioner was encountered at the United States-Canada port of entry in Blaine, Washington.  *See* Dkt. No. 1 at 5; Dkt. No. 8 ¶ 11.  He was returned to the United States by Canadian Border Patrol, taken into custody by United States Border Patrol, and transported to the Northwest ICE Processing Center where he remains detained. Dkt. No. 8 ¶ 11.

In October 2025, Petitioner timely appealed the immigration judge's order denying his applications for relief from removal.  Dkt. No. 8 ¶ 12.  In December 2025, Petitioner requested a bond redetermination, which was denied on the grounds of no jurisdiction to grant release.  *Id*. ¶¶ 13–14.  In January 2026, Petitioner filed a habeas petition, representing himself, and this petition was denied.  *See* Order, *Haidari v. ICE Field Office Director*, No. 2:26-cv-00039-TL (W.D. Wash.

ORDER GRANTING HABEAS PETITION - 2

Mar. 18, 2026), ECF No. 19 ("*Haidari I*"). In April 2026, Petitioner filed another habeas petition with the help of counsel, and the court granted the petition in part and denied in part: the Government was required to either release Petitioner or provide him with a bond hearing. *See* Order, *Haidari v. Scott*, No. 2:26-cv-01146-TL (W.D. Wash. May 1, 2026), ECF No. 11 ("*Haidari II*").

Consistent with that order, the immigration court held a bond hearing in May 2026, where Petitioner appeared with counsel. Dkt. No. 8 ¶ 19. The immigration judge found that Petitioner was not a danger to the community, but that he was a flight risk because he left the United States and attempted to enter Canada. *Id*. The immigration judge thus denied bond. Dkt. No. 6-3. Petitioner's deadline to appeal the bond denial is June 8, 2026. Dkt. No. 8 ¶ 22.

Petitioner filed a third habeas petition on May 14, 2026, arguing that the immigration judge abused his discretion in denying bond and requesting release as a remedy. Dkt. No. 1. For the following reasons, the Court agrees that Petitioner's continued detention is unlawful and that he must be released.

## II.     ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Here, the court in the *Haidari II* order previously found that Petitioner is detained under 8 U.S.C. § 1225(b)(2), which mandates that noncitizens who are detained under that statute be

ORDER GRANTING HABEAS PETITION - 3

detained for the entirety of the noncitizen's removal proceedings or any other applicable proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). The statute imposes no "'limit on the length of detention' pending a decision" and does not "authorize bond hearings or release on bond." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1112 (W.D. Wash. 2019) (quoting *Jennings*, 583 U.S. at 297)). However, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. 2:25-cv-00788-TMC, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

In *Haidari II*, the court applied the "*Banda* test" to evaluate the constitutionality of prolonged detention without a bond hearing, finding that Petitioner was constitutionally entitled to a bond hearing. *Haidari II* at 3. The question presented in the current habeas petition is whether the bond hearing and bond decision issued pass constitutional muster.[2]

Although it was not stated explicitly in *Haidari II*, the burden at the bond hearing was on the Government to prove by clear and convincing evidence that the detainee poses a flight risk or a danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011), *abrogated on other grounds by Jennings*, 583 U.S. 281; *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (holding "the constitutionally grounded hearing requirements set forth in *Singh* are also applicable [to bond hearings for those detained under § 1225(b)]")); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that clear-and-convincing-evidence standard in *Singh* was based on general principles of due process); *Banda*, 385 F. Supp. 3d at 1120.

---

[2] Although the Government argues that the Court should require Petitioner to exhaust administrative remedies before considering the habeas petition on its merits (Dkt. No. 5 at 3–5), the Court waives prudential exhaustion in light of the irreparable injury that might result from the continued unlawful detention the petition alleges. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *see also Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (waiving administrative exhaustion requirements because "given the broader irregularities in bond hearings across the country … administrative remedies in the immigration system appear no longer efficacious").

ORDER GRANTING HABEAS PETITION - 4

A district court reviews an immigration judge's bond determination findings as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Here, the immigration judge thus applied an erroneous burden of proof when he placed the burden on Petitioner, which is a clear legal error constituting an abuse of discretion. *See Martinez*, 124 F.4th at 785–86; *Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020). The Government's return acknowledges that the burden of proof was a contested issue at the bond hearing, and notes that the immigration judge ultimately placed the burden of proof on Petitioner, but does not state directly whether the burden was appropriately placed. Dkt. No. 5 at 2. Perhaps in tacit acknowledgement of the indefensibility of that fundamental aspect of the immigration judge's decision, the Government has failed to fully defend it. In the absence of an argument to the contrary from the Government, the Court finds that the immigration judge abused his discretion in erroneously placing the burden of proof on Petitioner at the bond hearing.

But even setting that error to the side—no matter where the burden was placed—no reasonable fact finder could review the record before the immigration judge and conclude that Petitioner is a flight risk. Petitioner has a fixed address in the United States with a U.S. citizen sponsor, he has work authorization and is trained as a physician, he appeared at all of his scheduled hearings before he was detained, he has no criminal history, he was previously paroled, he entered the United States lawfully via a CBP One appointment, and he remained compliant with his conditions of release. *See* Dkt. No. 7 (recording of bond hearing). These factors strongly weigh in Petitioner's favor, for purposes of a flight-risk finding. *See Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006) (listing factors to be considered in making a flight-risk finding). The Court's review of the immigration judge's oral flight-risk finding reveals that it was based on Petitioner's entry to Canada (Dkt. No. 7), and the immigration judge drew unreasonable inferences from that conduct.

ORDER GRANTING HABEAS PETITION - 5

That the Petitioner left the United States to seek refuge reflects (as Petitioner's counsel argued at the bond hearing) his desire to avoid returning to Afghanistan, and also reflects his lack of understanding of the import of that action while on parole—but does not suggest an intent to abscond. *Id*. Notably, as he did when he entered the United States, Petitioner crossed the Canadian border at a port of entry, "approach[ing] authorities rather than avoiding them[.]" Dkt. No. 9 at 4. The Court is not aware of any conduct on the part of Petitioner that suggests an intent to evade or flee from detection.

Because the Court finds that this record unequivocally contradicts the immigration judge's flight-risk finding, the Court finds that the immigration judge abused his discretion in denying bond based on that finding. Petitioner's continued detention would serve no immigration purpose, and the Court will exercise its discretion to order Petitioner's release. *See Garcia Miranda v. Hernandez*, No. 2:26-cv-00906-JNW, 2026 WL 1328227, at *4–5 (W.D. Wash. May 13, 2026); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

### III.    CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Government must release Petitioner no later than June 6, 2026, on reasonable conditions of supervision. The Government must file a status report no later than June 8, 2026, confirming compliance with this order.

Dated this 5th day of June, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING HABEAS PETITION - 6